UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/20/2024

RACHELLE HARRIS,

       Plaintiff,

 -against-

THE AUGUST AICHHORN CENTER FOR ADOLESCENT RESIDENTIAL CARE, INC. and MICHAEL A. PAWEL,

       Defendants.

21-CV-5926 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

 Defendants The August Aichhorn Center for Adolescent Residential Care, Inc. ("Aichhorn") and Michael Pawel (together with Aichhorn, "Defendants") move the Court for a summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking judgment that they are not liable for the claims asserted by plaintiff Rachelle Harris ("Plaintiff") for purported violations of the Family & Medical Leave Act ("FMLA"), 20 U.S.C. §§ 2601, *et seq*. (ECF No. 45). For the following reasons, the Court GRANTS, in part, and DENIES, in part, Defendants' motion for summary judgment.

## FACTUAL BACKGROUND

 The following facts are derived from the record, Defendants' Rule 56.1 Statement ("Defs. 56.1", ECF No. 57), Plaintiff's Rule 56.1 Statement ("Pl. 56.1", ECF No. 55), Defendants' Reply to Plaintiff's Counterstatement to Rule 56.1 Statement ("Defs. Reply 56.1", ECF No. 56),

Plaintiff's Response to Defendants' 56.1 Statement ("Pl. Resp. 56.1", ECF No. 54), affidavits, declarations, and exhibits.[1] They are not in dispute unless otherwise noted.

### Aicchorn and the Residential Treatment Facilities

Aicchorn was a not-for-profit corporation that provided long-term care and treatment for teenagers who were unplaceable in existing facilities in New York State. (Defs. 56.1 ¶ 4). Aicchorn operated two residential treatment facilities, one in Manhattan and one in Brooklyn (the "Brooklyn RTF"). (*Id*. ¶ 5).

On March 11, 2020, Aicchorn informed its employees that both of the residential treatment facilities would be closing. (*Id*. ¶ 6). The Manhattan location was to close entirely, while the Brooklyn RTF's operations were to be transferred to The Child Center of New York (the "Child Center"), a separate entity with no relationship to Aicchorn. (*Id*. ¶¶ 7, 10). The Child Center agreed to interview and hire some Aicchorn employees, but no employees were guaranteed positions. (*Id*. ¶¶ 8-9).

On August 15, 2020, the Brooklyn RTF was transferred to the Child Center. (Defs. 56.1 ¶ 53). Plaintiff interviewed for a position at the Brooklyn RTF on a go-forward basis with the Child Center in July 2020, but was ultimately not hired. (*Id*. ¶¶ 59-60).

### Plaintiff's Time at Aicchorn

In September 2019, Plaintiff was hired as Aicchorn's Quality Coordinator. (*Id*. ¶ 27). The parties dispute whether Plaintiff's employment terminated on March 31, 2020 or continued beyond that date. (*Compare Id*. *with* Pl. Resp. 56.1 ¶ 27). The parties dispute whether on March 15, 2020, Plaintiff called one of Aicchorn's employees to inform her Plaintiff's son's school had closed

---

[1] Citations to "Defs. Ex." refer to the Exhibits attached to the Declaration of Declaration of Dianna D. McCarthy in Support of Motion for Summary Judgment (ECF No. 48). Citations to "Pl. Ex." refer to the Exhibits attached to the Affirmation of Julie Salwen in Opposition of Motion for Summary Judgment (ECF No. 53). Citations to transcripts will reference the deponent's surname and be noted as follows: "Doe Tr.".

because of the COVID-19 pandemic. (*Compare* Pl. 56.1 ¶¶ 12-14 *with* Defs. Reply 56.1 ¶¶ 12-14). March 18, 2020 was the last day Plaintiff appeared to work at Aicchorn in person (Defs. 56.1 ¶ 29), though the parties dispute whether Plaintiff continued to work remotely. (*See* Pl. Resp. 56.1 ¶ 29). The parties further dispute whether Plaintiff gave a reason for not coming into work at Aicchorn after March 18, 2020 and whether Plaintiff ever received authorization to work from home. (Defs. 56.1 ¶¶ 43, 47; Pl. Resp. ¶¶ 56.1 43, 47).

By letter dated April 1, 2020, Plaintiff was informed her employment was terminated effective March 21, 2020. (Defs. 56.1 ¶ 51). Plaintiff asserts that she was only informed of her termination upon receipt of that letter on April 23, 2020. (Pl. 56.1 ¶ 24). Plaintiff otherwise asserts she continued to work from home into April. (*Id*. ¶ 20, 22-23).

## PROCEDURAL HISTORY

Plaintiff commenced this action on July 9, 2021. (ECF No. 1.) Plaintiff sought redress for alleged violations of the FMLA as amended by the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020) (the "FFCRA"), Emergency Family and Medical Leave Expansion Act, Pub. L. No. 116-127, 134 Stat. 189, *et seq.* (2020) ("EFMLEA"), and the Emergency Sick Paid Leave Act, Pub. L. No. 116-127, 134 Stat. 195, *et seq.* (2020) ("ESPLA"). (FAC ¶¶ 54-66, ECF No. 5). In particular, Plaintiff alleges that Defendants interfered with her right to leave under the FMLA and engaged in retaliatory discrimination by preventing her hire by the Child Center after it took control of the Brooklyn RTF. (*Id*. ¶¶ 62-64).

Defendants requested an extension to respond to the Complaint (ECF No. 7) and then improperly filed a motion to dismiss (ECF Nos. 9-11), prompting Plaintiff to file a First Amended Complaint ("FAC"). (ECF No. 15). Defendants filed an answer to the FAC on September 29, 2021

(ECF No. 17), and this matter was then referred to mediation, which proved unsuccessful. (ECF No. 17).

The parties submitted a proposed scheduling order on February 9, 2022, which the Court ordered on March 9, 2022. (ECF Nos. 21, 23). That same day, the Court also referred this matter to Magistrate Judge Judith C. McCarthy for general pretrial purposes. (ECF No. 24).

Discovery progressed, and Defendants requested leave to file a motion for summary judgment on October 19, 2022. (ECF No. 32). Plaintiff opposed Defendants' request on October 28, 2022. (ECF No. 43). On November 1, 2022, the Court granted Defendants leave to file a motion for summary judgment. (ECF No. 35).

Both parties requested extensions of time to file their respective papers, with the Court granting each. (*See* ECF Nos. 37-44). Defendants' motion for summary judgment was fully briefed and submitted by both parties on March 22, 2023. (*See* ECF Nos. 45-55). The parties' submissions consist of, among others: Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs. Mem.", ECF No. 46); Plaintiff's Memorandum of Law in Opposition of Motion for Summary Judgment ("Pl. Opp.", ECF No 51); and Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 50).

## LEGAL STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support

an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendants seek summary judgment on, and dismissal of, each of Plaintiff's claims. (*See* ECF No. 45). Plaintiff asserts claims alleging violations of the FMLA as amended by the FFCRA, the EFMLEA, and the ESPLA. (FAC ¶¶ 54-66).

### A. The Timing of Plaintiff's Termination

As a threshold matter, Defendants first argue that Plaintiff is barred as a matter of law from seeking leave under the FMLA because the EFMLEA and EPSLA were not operative at the time Plaintiff was terminated. (Defs. Mem. pp.7-9). The EFMLEA and EPSLEA went into effect on April 1, 2020. *Sosa v. New York City Housing Authority*, 22 Civ. 2460 (LGS), 2022 WL 16722099, at *3 (S.D.N.Y. Nov. 4, 2022); *see also* Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19,326 (Apr. 6, 2020). Defendants assert that Plaintiff was terminated effective March 31, 2020. (Defs. Mem. p.9). Indeed, Defendants have provided a letter to Plaintiff, dated April 1, 2020, stating her employment was terminated effective March 31, 2020. (Defs. Ex. Q). Plaintiff counters by pointing to evidence that Plaintiff remained in contact with Defendants' employees after April 1, 2020 and asserts that she was never told before, and continuing after, that date that her employment had been terminated. (Pl. Opp. pp.10-11).

Plaintiff has adduced evidence to that effect, including text message exchanges with one of Aicchorn's employees after her alleged termination discussing what may be matters relating to Plaintiff's work for Aicchorn. (*See generally*, Pl. Exs. A, B). In their respective 56.1 statements, the parties dispute the character of these messages. For example, Plaintiff describes an exchange discussing the closing out of administrative work as related to her usual duties of employment (Pl. 56.1 ¶ 26); Defendants counter that these tasks are part of the offboarding process. (Defs.

Reply 56.1 ¶ 26). The exchange itself is not expressly clear as to what the "administrative work" relates to, and a reasonable jury could conclude that such work relates to Plaintiff's separation from the Aicchorn or to the closing of the Aichhorn's Manhattan location—i.e., obligations arising from Plaintiff's job. (*See* Pl. Ex. A, HARRIS-000038, HARRIS-000039). Plaintiff has also provided a separate text message, dated March 29, 2020, to one of Defendants' employees wherein Plaintiff discusses a possible work-from-home arrangement and indicates that if she could not be accommodated, she would have to be let go from Aichhorn. (Pl. Ex. A, HARRIS-000036). Other messages indicate Plaintiff "signed into [her] computer" and inquired as to whether there was any work she could assist with. (Pl. Ex. A, HARRIS-000040).

Moreover, Plaintiff also states she was first informed of her termination on April 23, 2020. (Pl. 56.1 ¶ 24; *see also* Declaration of Rachelle Harris in Opposition of Motion for Summary Judgment ¶¶ 18-19, ECF No. 52). One of the text messages between Plaintiff and an Aichhorn employee, dated April 23, 2020, does, however, seem to indicate that Plaintiff was expecting the termination letter. (Pl. Ex. A, HARRIS-000043).

Taken together, then, the truth of these matters will likely come down to credibility determinations to be made by the jury. That is, there is a genuine dispute as to a material fact with respect to Plaintiff's termination date and Plaintiff's claims cannot be dismissed on grounds that she was terminated prior to when the EFMLEA and EPSLA became operative.

**B. Standards of Review for EFMLEA and ESPLA Claims**

Generally, leave is available to employees under the FLMA who have been employed "(i) for at least twelve months by the employer . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The parties do not dispute that Plaintiff began working for Aicchorn in

September 2019. (Pl. 56.1 ¶ 1). Under the general provisions of the FLMA, then, Plaintiff is not eligible for leave.

Because the Court has held there is a genuine dispute of material fact as to Plaintiff's termination date, however, Plaintiff may have been eligible for leave under the EFMLEA and ESPLA.

The FFCRA, of which the EFMLEA and ESPLA are a part, expanded the leave available to an "eligible employee" to include "12 workweeks of leave during any 12-month period . . . because of a qualifying need related to a public health emergency in accordance with section 2620 . . . ." 29 U.S.C. § 2612(a)(1)(F). Section 2620, in turn, defined an eligible employee as one "who has been employed for at least 30 calendar days by the employer with respect to whom leave is requested . . . ." 29 U.S.C. § 2620(a)(1)(A)(i). Finally, a "qualifying need related to a public health emergency" occurs when an:

> employee is unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency.

29 U.S.C. § 2620(a)(2)(A).

The parties do not dispute whether Plaintiff would be eligible for leave under the FMLA as amended by the FFCRA. The enforcement provisions of the FMLA are not amended by the FFCRA, and the Court will accordingly review Plaintiff's claims in line with the well-settled analytical framework for such claims brought under the FMLA.

**C. Plaintiff's FMLA Interference Claim**

With respect to Plaintiff's FMLA interference claim, Defendants contend Plaintiff failed to properly give notice she intended to take leave and thus Defendants could not have interfered with such leave. (Defs. Mem. p.9).

To sustain an FMLA interference claim,

> a plaintiff must show: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which was entitled under the FMLA.

*Coutard v. Municipal Credit Union*, 848 F.3d 102, 109 (2d Cir. 2017) (quoting *Graziadio v. Culinary Institute of America,* 817 f.3d 415, 424 (2d Cir. 2016)).

The Court's prior holding that there is a genuine dispute of material fact as to whether Plaintiff was still employed by Defendants on April 1, 2020 obviates the need to analyze Plaintiff's claim with respect to the first prong of the foregoing. Therefore, the only prong in dispute is whether Plaintiff gave proper notice to Defendants when requesting leave. (Defs. Mem. pp.11-12).

Defendants argue that Plaintiff never gave notice as to her intent to take leave. (*Id*. p.12). As an initial matter, Plaintiff appears to indicate that she requested leave on March 15, 2020 in a phone call with one of Defendants' employees. (*See* Pl. 56.1 ¶¶ 13-14). The FFCRA was signed into law on March 18, 2020. Pub. L. No. 116-127, 134 State. 178 (Mar. 18, 2020). Therefore, to the extent Plaintiff asserts she requested leave prior to the FFCRA being signed into law and before it went into effect, she fails to provide proper notice. It cannot be that a Plaintiff may give notice under a law that has yet to pass both chambers of Congress, let alone be signed by the President.

9

Plaintiff's testimony, however, indicates that some time after the FFCRA went into effect, she "reached out to [Defendants] to get some clear directives in terms of FMLA . . . ." (Harris Tr. p.144: 3-10). When a need giving rise to leave is unforeseeable, the regulations promulgated under the FMLA require notice "as soon as practicable under the facts and circumstances of the particular case[,]" with such notice to include "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. §§ 825.303(a), (b). Further, an employee is not required to "expressly assert rights under the [FMLA] or . . . mention the FMLA to meet . . . her obligation to provide notice . . ." so long as the employee states a qualifying reason for the needed leave and meets the notice requirements. 29 C.F.R. § 825.301(b). The Second Circuit has held that, unless an employer requests additional information, notice is sufficient "if the notice indicates reasonably that the FMLA may apply." *Coutard v. Municipal Credit Union*, 848 F.3d 102, 111 (2d Cir. 2017).

Here, there are too many factual uncertainties and disputes for the Court to resolve at the summary judgment stage. Most obviously, Defendants assert no notice was given, while Plaintiff has testified to inquiring as to FMLA leave after the FFCRA was in effect. Construing in Plaintiff's favor, as the non-movant, it is possible such requests constitute sufficient notice under the FMLA. The record does not support a clear indication either way, and thus the definitive determination falls to the jury.

As such, Defendants' motion for summary judgment with respect to Plaintiff's FMLA interference claim is DENIED.

### D. Plaintiff's FMLA Retaliation Claim

Plaintiff's FMLA retaliation claim alleges Defendants retaliated against her by preventing Plaintiff from gaining employment at the Brooklyn RTF. (FAC ¶¶ 64; *see also Id*. ¶¶ 3, 46-53). More specifically, Plaintiff alleges that Defendants told the *Child Center* not to hire her at the Brooklyn RTF. (*Id*. ¶¶ 47-50). Plaintiff's argument shifts in her opposition, now claiming that Defendants retaliated against her by terminating her employment. (Pl. Opp. pp.12-16). It is axiomatic that claims not included in the complaint may not be asserted in opposition to summary judgment. *Mediavilla v. City Of New York*, 259 F. Supp.3d 82, 106 (S.D.N.Y. 2016). The Court will therefore only consider Plaintiff's retaliation claim with respect to the allegations Defendants retaliated by preventing Plaintiff from joining the Brooklyn RTF after the Child Center took control.

FMLA retaliation claims are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Graziadio*, 817 F.3d at 429. A plaintiff is first required to show: (1) she exercised rights protected by the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Id*. (citing *Donnelly v/ Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 137 (2d Cir. 2012)). A successful showing shifts the burden to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. *Id*. (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)). If defendant meets their burden, the burden shifts back to plaintiff to demonstrate that the defendant's explanation is simply pretext. *Id*.

The Court has previously held that there is a genuine dispute of material fact as to whether Plaintiff exercised rights under the FMLA, and the parties do not dispute whether Plaintiff was qualified for her position or for a position with the Child Center. The question then becomes whether Plaintiff suffered an adverse employment action when Defendant Pawel allegedly recommended the Child Center not hire Plaintiff. She has not.

Under the FMLA, an adverse employment action is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising her legal rights." *Di Figueroa v. New York*, 403 F. Supp.3d 133, 156 (E.D.N.Y. 2019) (quoting *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp.3d 501, 512 (E.D.N.Y. 2018)) (cleaned up). While the parties dispute when, exactly, Plaintiff's employment with Aicchorn ended, they do not dispute that upon her receipt of the termination letter on April 23, 2020, Plaintiff was no longer employed. Plaintiff was informed of a possible position at the Brooklyn RTF as run by the Child Center on June 5, 2020. (Pl. 56.1 ¶ 30). She subsequently interviewed for that position in July 2020. (Defs. 56.1 ¶ 59). After not being hired, Plaintiff alleges a former Aicchorn employee told Plaintiff that Defendant Pawel had not recommended her for the position. (Pl. 56.1 ¶ 33). As such, even assuming Defendant Pawel did recommend the Child Center not hire Plaintiff: (1) Plaintiff was no longer employed by Aicchorn and (2) thus could not be dissuaded from exercising her FMLA rights—to the extent it is in dispute Plaintiff did have rights under the FMLA, it is Plaintiff's position she exercised them in March and April 2020. Further, the FMLA is not so expansive that any negative assessment of an employee shared by a former employer with a prospective employer can serve as a basis for a retaliation claim against that former employer.

In light of the foregoing, Defendants' motion for summary judgment with respect to Plaintiff's FMLA retaliation claim is GRANTED.

## CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED, in part, and DENIED, in part. Defendants' motion with respect to Plaintiff's Family & Medical Leave Act interference claim is DENIED. Defendants' motion with respect to Plaintiff's Family & Medical Leave Act retaliation claim is GRANTED.

The Parties are directed to appear for a telephonic pre-trial conference on June 28, 2024 at 11 a.m. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

The Clerk of the Court is directed to terminate the motions at ECF No. 45.

Dated: May 20, 2024　　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

13